U.S. DISTRICT COURT
WESTERN DISTRICT of LOUISIANA
RECEIVED - ALEXANDRIA

MAY 3 2007

ROBERT H. SHEMWELL, CLERK
BY _____
       DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| GAYLE M. BORDELON, <br> Appellant | CIVIL ACTION <br> NO. CV06-0197-A |
| VERSUS | |
| JO ANNE B. BARNHART, <br> COMMISSIONER OF SOCIAL SECURITY, <br> Appellee | JUDGE DEE D. DRELL <br> MAGISTRATE JUDGE JAMES D. KIRK |

## REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Gayle M. Bordelon ("Bordelon") filed an application for supplemental security income ("SSI") benefits on July 9, 2004, alleging a disability onset date of November 20, 2003 (Tr. p. 40), due to "asthma, diabetes, nerves, history of kidney stones, ob/gyn problems, feet swell" (Tr. p. 52). That application was denied by the Social Security Administration ("SSA") (Tr. p. 22).

A de novo hearing was held before an administrative law judge ("ALJ") on September 13, 2005, at which Bordelon appeared with a representative and a vocational expert ("VE") (Tr. p. 167). The ALJ found that, although Bordelon has "severe" impairments of "depression, asthma, diabetes, kidney stones, and low back pain," she has the residual functional capacity to perform light work that involves only one or two step instructions and only limited public interaction, and that does not involve heavy stress (Tr. po. 15, 17). The ALJ conclude Bordelon can perform light work jobs that exist in significant numbers in the national economy such as housekeeping and cleaning jobs (Tr. p. 17).

Bordelon requested a review of the ALJ's decision, but the

Appeals Council declined to review it (Tr. p. 3) and the ALJ's decision became the final decision of the Commissioner of Social Security ("the Commissioner").

Bordelon next filed an appeal in this court, raising the following issues for judicial review:

> 1. The ALJ failed to properly combine and then evaluate plaintiff's mental impairments in the aggregate and violated binding social security ruling SSR 96-8P.
>
> 2. The ALJ erred as a matter of law by positing a defective hypothetical question to the vocational expert.

Both parties having filed briefs on the issues, Bordelon's appeal is now before the court for consideration.

### Scope of Review

In considering Social Security appeals such as the one that is presently before the Court, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether there were any prejudicial legal errors. McQueen v. Apfel, 168 F.3d 152, 157 (5th Cir. 1999). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994), citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 482 (1971). Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision but must include a scrutiny of the record as a whole. The substantiality of the evidence must take into account whatever in the record fairly

detracts from its weight. <u>Singletary v. Bowen</u>, 798 F.2d 818, 823 (5th Cir. 1986).

A court reviewing the Commissioner's decision may not retry factual issues, reweigh evidence, or substitute its judgment for that of the fact-finder. <u>Fraga v. Bowen</u>, 810 F.2d 1296, 1302 (5th Cir. 1987); <u>Dellolio v. Heckler</u>, 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than the court. <u>Allen v. Schweiker</u>, 642 F.2d 799, 801 (5th Cir. 1981). Also, <u>Anthony v. Sullivan</u>, 954 F.2d 289, 295 (5th Cir. 1992). The court does have authority, however, to set aside factual findings which are not supported by substantial evidence and to correct errors of law. <u>Dellolio</u>, 705 F.2d at 125. But to make a finding that substantial evidence does not exist, a court must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical evidence." <u>Johnson v. Bowen</u>, 864 F.2d 340 (5th Cir. 1988); <u>Dellolio</u>, 705 F.2d at 125.

<u>Eligibility for SSI Benefits</u>

To qualify for SSI benefits, a claimant must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1381(a). Eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. § 1382(a). To establish disability, plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than 12 months. Plaintiff must also show that the impairment precludes performance of the

work previously done, or any other kind of substantial gainful employment that exists in the national economy. 42 U.S.C. § 1382(a)(3).

## Summary of Medical Records and Testimony

In November 2003, Bordelon underwent a psychosocial assessment by a social worker at Huey P. Long Hospital (Tr. pp. 116-119). Bordelon and her husband reported that she was under overwhelming psychosocial stressors. Bordelon was admitted for depression and suicidal ideations (Tr. p. 118), and was referred to the mental health clinic (Tr. p. 119).

Bordelon was treated for an adjustment disorder with depressed mood at the mental health clinic from November 2003 through June 2005, for which she was prescribed Buspar, Fluoxetine, and Hydroxyzine (Tr. pp. 107-115, 144-153). In August 2005, Bordelon was prescribed Pamelor, antidepressant ((Tr. p. 157).

In May through June 2004, Bordelon was successfully treated for kidney stones, which were removed (Tr. pp. 96-106).

In August 2004, Bordelon underwent a mental status examination with Rick Adams, a clinical psychologist (Tr. pp. 121-124). Bordelon was noted to emphasize her physical pain and psychological stresses, and said she was "nervous" (Tr. p. 122). Dr. Adams found Bordelon had mild problems with concentration, her pace tended to be slow, and he suspected she had difficulty with persistence (Tr. p. 123). Dr. Adams found Bordelon was non-psychotic, without severe cognitive deficits, has abilities that are "probably at the lower end of average," is somewhat dependent and dramatic, and

4

might amplify problems to some degree (Tr. p. 124). Bordelon was diagnosed with adjustment disorder with depressed mood, anxiety disorder NOS, and personality disorder NOS with dependent and histrionic features (Tr. p. 124).

In September 2004, Jack L. Spurrier, Ph.D., reviewed Bordelon's medical records and filled out a psychiatric review technique form and a mental residual functional capacity assessment (Tr. pp. 125-141). Bordelon was noted to have an adjustment disorder with depressed mood, an anxiety disorder NOS, and a personality disorder NOS with dependent and histrionic features. Dr. Spurrier found Bordelon has a moderately limited ability to understand and remember detailed instructions (understanding and memory), moderately limited abilities to carry out detailed instructions and maintain attention and concentration for extended periods (persistence and pace), a moderately limited ability to interact appropriately with the general public (social interaction), and a moderately limited ability to set realistic goals or make plans independently of others (adaptation). He concluded that Bordelon is capable of managing funds and is mentally capable of functioning in a work setting (Tr. p. 141).

In August and September 2004, Bordelon was evaluated at the diabetic clinic at Huey P. Long Medical Center and it was noted that she smoked tobacco, was on a diabetic meal plan, and complained of right-sided low back pain which radiated down the back of her right leg (Tr. p. 160). Bordelon was obese (229 pounds), had negative straight leg raises, decreased edema in her

5

extremities, and mild intermittent asthma, and her central nervous system was intact (Tr. pp. 160-161). Bordelon was encouraged to lose weight, exercise, and restrict her calories, she was prescribed Lortab for her back pain although no joint inflammation, nerve deficits, or warning signs were noted, and her complaints of continued kidney stone symptoms were noted (Tr. p. 161). CT scans of Bordelon's pelvis and abdomen was unremarkable, despite her complaints of abdominal and flank pain consistent with kidney stone symptoms (Tr. pp. 162-164).

At the September 2005 administrative hearing, Bordelon testified that she was 38 years old, 5'2" tall, weighed 240 pounds, is right handed, and lives with her husband and two teenaged children (Tr. p. 171). Bordelon testified that she completed the seventh grade in school (regular classes), was sixteen years old when she left school, had not had any vocational training, does not have a GED, can do very basic reading and math, and has a driver's license for which she took a written test (Tr. pp. 171- 173). Bordelon testified that she drives a little bit (Tr. p. 173).

Bordelon last worked in February 2003 at a grocery store deli (about three months) (Tr. pp. 173-174). Prior to that, Bordelon worked at a correctional center for about three months (Tr. pp. 173-174), and at a Dollar General Store for a few months in 2001 (Tr. p. 174).

Bordelon testified she did not remember why she listed November 2003 as her disability onset date (Tr. p. 174). Bordelon testified that, in the last couple of years, she has had problems

6

with depression, anxiety, sleeping, diabetes, and her kidneys (Tr. p. 175). Bordelon testified that she doesn't socialize, she stays home a lot, she takes pills for her diabetes, and she has trouble falling asleep at night (Tr. p. 176). Bordelon testified that she had surgery to remove her kidney stones, but the doctor told her she has a 70 percent chance of having kidney stones again (Tr. p. 176); she has pain in her kidneys, drinks two liters of water daily, and has her kidneys checked regularly (Tr. p. 176).

Bordelon testified that she gets depressed or anxious easily, cries a lot, fears she may hurt herself because she once sliced her arm with a knife but has no recollection of it, and takes medication for her mental problems (Tr. p. 176). Bordelon sees a counselor and a doctor regularly (Tr. pp. 176-177).

Bordelon testified that, on a normal day, she gets up in the morning and feeds her chickens and dog, does housework, and watches TV (Tr. p. 177). Bordelon testified she has trouble concentrating on TV programs, but she enjoys sitting outside and watching her chickens or playing with her dog (Tr. p. 180). Bordelon testified she does sweeping, mopping, cleans the bathroom, and washes dishes a little bit, but that her daughter helps her with all the housework (Tr. p. 180). Bordelon's daughter also helps her do the cooking and grocery shopping (Tr. pp. 178-179). Bordelon's daughter and son do the yard work (Tr. p. 180). Bordelon is able to bathe and dress by herself (Tr. p. 180). Bordelon testified that she cannot work because she cannot stay at a job more than three months (Tr. p. 178). Bordelon testified that, when she

worked at the prison, she was fussed at for miscounting the inmates and the cigarette smoke in the prison gave her an asthma attack (Tr. p. 178). Bordelon testified that she messed up orders at the grocery store deli and had to stand on her feet a lot, which made her legs hurt and "give out" (Tr. p. 179). Bordelon testified that she can lift and carry a gallon of milk (Tr. p. 179). Bordelon testified that she does not like to visit her family because she likes to be by herself, and that she sometimes goes to church, but she does not belong to any clubs (Tr. pp. 179-180).

Bordelon testified that sometimes her appetite is poor but she eats constantly because she is depressed (Tr. p. 181). Bordelon does not sleep well at night (Tr. p. 181), and has bladder control problems at night (Tr. p. 182). During the day, Bordelon has to go to the bathroom eight to ten times in an eight hour day (Tr. p. 182). Bordelon testified that she takes BuSpar (for anxiety), Prozac, Xanax, Visteril (a sleep aid), Glucotrol, Glucophage, Advair, hyoscyamine (for bladder spasms), and Pamelor. Bordelon testified that her medications make her unable to drive (Tr. p. 184).

Bordelon testified she does not know how far she can walk before she needs to take a break, but thought she might be able to walk two blocks (Tr. pp. 184-185). Bordelon testified she can stand for about twenty minutes before her feet start hurting, can sit indefinitely, does not have any problems with reaching forward or over her head, and does not have any problems picking up small objects (Tr. p. 185). Bordelon testified she tries to get along

8

with people but does not go around them very much because she insults people and then does not remember having done so (Tr. p. 186). Bordelon also testified that she does not like time deadlines, does not like to be around crowds, and summer heat bothers her (Tr. p. 186).

The VE testified that Bordelon has no past relevant work due to the fact that each job was of such short duration (Tr. p. 187). In response to a hypothetical by the ALJ, concerning a person of Bordelon's age, experience, and educational level, who can only lift 20 pounds occasionally and 10 pounds frequently (due to periodic pain from kidney stones), can walk, stand or sit six hours in an eight hour day, and has a limited ability to read, write and do math, can rarely interact with the public, and can only do one or two step, simple instructions with low stress (Tr. pp. 187-188), the VE testified such a person can do light housekeeping/cleaning work (15,260 jobs in Louisiana and 896,370 jobs nationally) (Tr. p. 189). The VE further testified that such a person could miss about one day of work a month due to health problems (Tr. pp. 189-190).

## Findings and Conclusions

After review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. §405(g), I find that there is substantial evidence in the record as a whole to support the Commissioner's decision of non-disability and the Commissioner's decision comports with all relevant legal standards. Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir. 1992).

In fulfillment of Fed.R.Civ.P. rule 52, I note that the

Commissioner's findings and conclusions[1] put at issue by appellant are supported by substantial evidence, which can be outlined as follows.

Mental Impairments

First, Bordelon contends the ALJ failed to properly combine and evaluate her mental impairments in the aggregate and violated binding social security ruling SSR 96-8P. Specifically, Bordelon claims the ALJ should have considered the effects of her mental illness (adjustment disorder with depressed mood and anxiety) in combination with her difficulty concentrating.

The ALJ found Bordelon suffers from adjustment order with depressed mood and anxiety, with symptoms of a mild degree of restriction in activities of daily living, moderate difficulties in maintaining social functioning, and moderate restrictions in maintaining concentration, persistence and pace, but there was no evidence of episodes of decompensation in a work-like settings and the ALJ concluded Bordelon does not meet or equal Listing 12.04, Affective Disorders, of Appendix 1 (Tr. p. 13).

First, Bordelon contends the ALJ failed to find Bordelon suffers from a severe impairment of personality disorder, as diagnosed by Dr. Adams (Tr. p. 124) and Dr. Spurrier (Tr. p. 125). Although the ALJ did not identify personality disorder as one of Bordelon's severe impairments, she included in her decision and her hypothetical question to the VE *all* of the symptoms from Bordelon's

---

[1] The relevant findings and conclusions are located in the administrative record at Transcript pages 14-25.

10

mental health problems, as found by the psychologists, Dr. Adams and Dr. Spurrier. Bordelon has not pointed to any symptoms affecting her residual functional capacity which the ALJ overlooked. Therefore, although the ALJ failed to include "personality disorder" in her list of Bordelon's severe impairments, Bordelon cannot show prejudice arising from that omission since the ALJ considered the symptoms and effects of that impairment and included them in the hypothetical question to the VE.

Bordelon also argues the ALJ erred in failing to consider Listing 12.06, Anxiety Disorders, and Listing 12.08, Personality Disorders. However, it is noted that Bordelon has not shown specifically how she meets either of these listings. It is clear that Bordelon does not meet Listing 12.06 because she does not have medically documented findings showing she meets at least one of the criteria in 12.06(A)[2] and does not suffer from at least two of the criteria in 12.06(B) or meet 12.06(C).[3] Likewise, Bordelon does

---

[2] Section 12.06(A) requires the claimant to meet at least one of the following - (1) generalized persistent anxiety accompanied by three out of four of the following, motor tension, autonomic hyperactivity, apprehensive expectation, or vigilance and scanning, (2) a persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation, (3) recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week, (4) recurrent obsessions or compulsions which are a source of marked distress, or (5) recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress.

[3] Section 12.06(B) requires the claimant to meet at least two of the following - )1_ marked restrictions of activities of

11

not meet Listing 12.08 because she has not shown she meets at least one of the criteria of 12.08(A)[4] and two of the criteria in 12.08(B).[5] Moreover, the ALJ discussed the factors set forth in 12.06(B) and 12.08(B), which are the same factors set forth in Listing 12.04(B), and noted Bordelon did not have any more than moderate difficulties in any area of functioning (without specifically those listings).

Therefore, this issue is meritless.

## Issue No. 2 - Hypothetical Question to the VE

Bordelon also contends the ALJ erred as a matter of law by positing a defective hypothetical question to the vocational expert. Specifically, Bordelon argues the ALJ failed to include the "severe mental impairment, Personality Disorder" when she listed Bordelon's impairments for the VE.

A "severe" impairment is one which imposes more than a minimal limitation on an individual's ability to perform basic work-related

---

daily living, (2) marked difficulties in maintaining social functioning, (3) marked difficulties in maintaining concentration, persistence, or pace, or (4) repeated episodes of decompensation, each of extended duration - OR a claimant may meet 12.06(C) by showing she is completely unable to function independently outside the area of her home.

[4] To meet the requirements of 12.08(A), the claimant must have deeply ingrained, maladaptive patterns of behavior associated with one of the following - (1) seclusiveness or autistic thinking, (2) pathologically inappropriate suspiciousness or hostility, (3) oddities of thought, perception, speech, and behavior, (4) persistent disturbances of mood or affect, (5) pathological dependence, passivity or aggressivity, of (6) intense and unstable interpersonal relationships and impulsive and damaging behavior.

[5] The requirements of 12.08(B) are the same as those for 12.06(B), set forth in footnote 3, above.

physical or mental activities.  See 20 C.F.R. § 404.1521(b); 20 C.F.R. § 416.906.  Thus, the term "impairments," as used above, refers to a claimant's ailments, or disorders.  Impairments *cause* functional limitations, exertional or nonexertional, which affect the ability to work.  Obviously, impairments vary in degree of severity from person to person, so they may cause different functional limitations or different degrees of limitations in each person.  Therefore, a hypothetical question should include the specific physical and/or mental functional limitations which affect a claimant's ability to work, in order to tailor the question to the particular claimant, rather than merely stating the medical names of the claimant's diagnosed impairments.  Compare, Boyd v. Apfel, 239 F.3d 698 (5th Cir. 2001).

Bordelon has failed to distinguish her diagnosed impairments from the functional limitations caused by those impairments on her ability to work.  Since the ALJ properly described Bordelon's specific functional limitations in the hypothetical question to the VE, the hypothetical question was proper.  Moreover, asking a VE to consider the functional impact of listed medical diagnoses on a claimant's ability to work would place the VE in the position of having to know and make a medical assessment of the symptoms and resulting limitations to the claimant of each diagnosed impairment, an area obviously outside of the VE's expertise.

Bordelon also contends the hypothetical did not include "moderate limitations" in concentration, persistence and pace, as found by Dr. Spurrier, the non-examining psychological consultant.

Instead, the ALJ stated in the hypothetical that Bordelon had only "mild limitations" in those areas, as found by the examining psychologist, Dr. Adams.

Pursuant to 20 C.F.R. § 416.927, an examining physician's opinion should be given more weight than a non-examining physician's opinion.[6] Also, <u>Carry v. Heckler</u>, 750 F.2d 479, 484 (5th Cir. 1985). Little weight is accorded to the opinion of a reviewing physician if it is contrary to the opinion of the only physician to examine the patient. <u>Strickland v. Harris</u>, 615 F.2d at 1109-10 (5th Cir. 1980).

Dr. Adams is the only psychologist of record who actually examined Bordelon. Since Dr. Adam's opinion is based on his mental status examination of Bordelon, and Dr. Spurrier's opinion is based only on a review of Bordelon's medical records, Dr. Adams' opinion was properly accorded more weight by the ALJ. Therefore, Bordelon's contention that the ALJ erred in failing to include moderate impairments in concentration, persistence, and pace in the hypothetical question is meritless.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that the

---

[6] Section 404.1527(d) and 416.927(d) of 20 C.F.R. state:
*(d) How we weigh medical opinions.* Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
 *(1) Examining relationship.* Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.

final decision of the Commissioner be AFFIRMED and that Bordelon's appeal be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 3rd day of May, 2007.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE